JOURNAL ENTRY and OPINION
Defendant-appellant herein, Deshawn Dye, appeals from a jury verdict in the Cuyahoga County Court of Common Pleas pursuant to which he was found guilty on all counts of a two count indictment. Count one of the indictment charged one count of murder, with a firearm specification. Count Two of the indictment charged the appellant with having a weapon while under a disability.
On October 1, 1999, the appellant shot and killed twenty-one year old Gregory Smith at close range as Smith was sitting in his car. Appellant fled the scene, but turned himself in at the Sixth District police station the next day after learning through his stepfather that the police were seeking him for questioning. On the same day, October 2, 1999, a complaint of murder had been brought against the appellant in the Cuyahoga County Court of Common Pleas — Juvenile Division — as the appellant was only seventeen years old at the time. In his statement to the police, the appellant admitted that he was the person holding the gun when it fired at close range into the appellant's head, but stated that the weapon had discharged accidentally when the victim swung his hand out and hit the gun.
On December 3, 1999, a judge of the Juvenile Court determined, subsequent to a mandatory bind-over hearing, that the appellant should be bound over for trial as an adult. On March 13, 2000, the appellant's trial commenced. The parties stipulated as to one of the elements of having a weapon while under disability, to wit: that the appellant was previously adjudicated delinquent on a complaint alleging possession of drugs. On March 17, 2000, the jury returned a guilty verdict as to both counts, as well as on the firearm specification. On count one, the trial court sentenced the appellant to fifteen years to life on the murder charge, and three years on the firearm specification to run concurrent with the term imposed on the murder charge. The court also imposed a term of six months on the second count of having a weapon while under a disability to be served concurrently with the sentences imposed in count one.
The appellant herein appeals from the jury verdict as well as from several evidentiary rulings made by the trial court. Five assignments of error are presented by the appellant for this court's review. Because we find that the trial court did not commit any reversible error, we affirm the judgment of the trial court in all respects. The appellant's first three assignments of error, having a common basis in law and fact, will be addressed concurrently in this opinion. Assignments of error one, two and three state:
 I. DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS DENIED BECAUSE OF INEFFECTIVE COUNSEL, IN THAT A SPEEDY TRIAL WAIVER WAS SIGNED BY THE DEFENDANT, IN DERELICTION OF O.R.C. 2945.17(E) AFTER MR. DYE HAD BEEN INCARCERATED FOR MORE THAN 90 DAYS.
 II. DEFENDANT'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS, WAS DENIED WHEN HE WAS CONVICTED AND SENTENCED FOR THE CRIME OF MURDER USING EVIDENCE OBTAINED FROM STATEMENT OBTAINED THROUGH AN INEFFECTIVE WAIVER OF RIGHTS, AN ADDITIONAL SAFEGUARD TO JUVENILE DEFENDANTS.
 III. THE TRIAL COURT ERRED IN THAT IT DID NOT RULE UPON THE DEFENSE'S MOTION TO SUPPRESS EVIDENCE. IT WAS FATAL ERROR TO ADMIT TESTIMONY FROM THE HOMICIDE DETECTIVE REGARDING THE TAKING OF AN ALLEGED VOLUNTARY STATEMENT IN DEROGATION OF DEFENDANT'S RIGHT AS A JUVENILE TO REPRESENTATION AND TO HAVE A PARENT PRESENT WHEN GIVING A STATEMENT TO POLICE.
In this case, the Juvenile Court relinquished jurisdiction on December 3, 1999. On February 8, 2000, the appellant properly executed a speedy trial waiver. The time for a speedy trial commences to run the day after a juvenile court relinquishes jurisdiction. State v. Bickerstaff (1984),10 Ohio St.3d 62, 67, 461 N.E.2d 892, 896-897; State, ex rel. Williams, v. Court of Common Pleas (1975), 42 Ohio St.2d 433, 435.
The time limits set forth in R.C. 2945.71 (C) apply only to "[a] person against whom a charge of felony is pending." State ex rel. Williams,42 Ohio St.3d at 434. A juvenile who has lodged against him an affidavit alleging that he is delinquent because he committed an act which, if committed by an adult, would constitute a felony is not a person against whom a charge of felony is pending. Id. at 435. Thus, when the speedy trial waiver was signed by the appellant, he was only in his sixty-seventh day of incarceration, well within the ninety day period provided for by R.C. 2945.71(C)(2).
The appellant alleges in assignments of error two and three that the voluntary statement that he made to the police was improperly obtained. The statement in question was verified as accurate and signed by the appellant. Prior to making the statement, the appellant was advised that he had the right to have an attorney present while making the statement and that he also had the right to have his parents present. The appellant separately stated that he understood the right to have an attorney present and the right to have a parent present and that he was voluntarily waiving each of these rights. The appellant's waiver of these rights was made both orally and in writing.
There is absolutely no evidence in the record tending to indicate that the statement in question was not given freely and voluntarily. The appellant's argument for suppression reduced to its essence is that the statement should have been suppressed by the trial court because it incriminated the appellant. This, of course, is not a valid basis for suppressing a statement voluntarily made.
In Colorado v. Connelly (1986), 479 U.S. 157, 165-168, 107 S.Ct. 515,93 L.Ed.2d 473, the United States Supreme Court held both that a defendant's waiver of a constitutional right under the Miranda doctrine need only be shown by a preponderance of the evidence and that a statement made by a defendant will not be suppressed based upon an alleged infirmity in the defendant's mental state unless the element of police coercions misconduct is also shown:
 We now reaffirm our holding in Lego: Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our Miranda doctrine, the State need prove waiver only by a preponderance of the evidence. See Nix v. Williams, 467 U.S. 431, 444, and n. 5 (1984); United States v. Matlock, 415 U.S. 164, 178, n. 14 (1974) ("[The] controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence. . ."). Cf. Moore v. Michigan, 355 U.S. 155, 161-162 (1957). If, as we held in Lego v. Twomey, supra, the voluntariness of a confession need be established only by a preponderance of the evidence, then a waiver of the auxiliary protections established in Miranda should require no higher burden of proof. "[Exclusionary] rules are very much aimed at deterring lawless conduct by police and prosecution and it is very doubtful that escalating the prosecution's burden of proof in . . . suppression hearings would be sufficiently productive in this respect to outweigh the public interest in placing probative evidence before juries for the purpose of arriving at truthful decisions about guilt or innocence." Lego v. Twomey, supra, at 489. See also United States v. Leon, 468 U.S., at 906-913.
 There is obviously no reason to require more in the way of a "voluntariness" inquiry in the Miranda waiver context than in the Fourteenth Amendment confession context. The sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion. See United States v. Washington, 431 U.S. 181, 187
(1977); Miranda, supra, at 460. Indeed, the Fifth Amendment privilege is not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion." Oregon v. Elstad, 470 U.S. 298, 305 (1985). The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word. See Moran v. Burbine, 475 U.S., at 421 ("[The] relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. . . . [The] record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements"); Fare v. Michael C., 442 U.S. 707, 726-727 (1979) (The defendant was "not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit. . . . The officers did not intimidate or threaten respondent in any way. Their questioning was restrained and free from the abuses that so concerned the Court in Miranda").
In the instant case, there are no credible allegations of police misconduct or coercion. Additionally, the evidence of the voluntariness of the appellant's statement, consisting of the testimony of the detective who took the statement, as well the original statement itself, far outweigh the appellant's threadbare allegations of coercion in the within appeal.
Although the appellant filed a boilerplate motion to suppress any statements taken by the police at the onset of discovery in this case, the motion did not contain any allegation that the statement given to the police was improperly obtained. The motion to suppress was not renewed at any time either prior to trial or after the commencement of the trial.
Crim.R. 47 requires that:
 * * * A motion, other than one made during trial or hearing, shall be in writing unless the court permits it be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. * * *
In the case of State v. Neuhoff (1997), 119 Ohio App.3d 501, 505,695 N.E.2d 825, 828, this court recognized this particularity requirement contained in Crim.R. 47 and stated as follows:
 In order to require a hearing on a motion to suppress evidence, the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided. Citing, State v. Shindler (1994), 70 Ohio St.3d 54, 636 N.E.2d 319.
The motion to suppress filed by the appellant with the trial court in this case failed to comply with Crim.R. 47 as it did not state with particularity the grounds upon which relief was sought.
Therefore, for the aforementioned reasons we overrule each of the appellant's first three assignments of error.
The appellant's fourth assignment of error states:
 IV. THE TRIAL COURT ERRED IN THAT IT DID NOT PERMIT THE DEFENSE TO PRESENT EVIDENCE OF DESHAWN DYE'S ILLITERACY, LACK OF FORMAL EDUCATION AND CLASSIFICATION AS A SPECIAL EDUCATION STUDENT AS DEFINED BY RECORDS PROVIDED BY THE CLEVELAND BOARD OF EDUCATION. SUCH RECORDS WOULD SUPPORT THE CLAIM OF THE INVALIDITY OF THE WAIVER OBTAINED BY THE CLEVELAND POLICE.
This assignment of error is not only without merit, but also constitutes a distortion for the record. The appellant was not denied an opportunity to introduce the records in question into evidence. To the contrary, the trial court gave the appellant's trial counsel ample opportunities to produce the records in question. After repeatedly failing to produce the records in question despite being given at least two extensions in which to do so, appellant's trial counsel informed the trial court that we're prepared to go forward without the school records. Accordingly, as the factual premise underlying this assignment of error is belied by the record in this case, the same is hereby overruled.
The appellant's fifth and final assignment of error states:
 V. THE TRIAL COURT ERRED WHEN IT PERMITTED TESTIMONY TO BE PRESENTED USING A SUBSTITUTE WEAPON WHICH HAD SPECIFICATIONS WHICH VARIED WIDELY FROM THE DESCRIPTION OF THE ALLEGED HOMICIDE WEAPON.
The actual weapon used in the killing in this case was never recovered. During the trial, the state used a substitute weapon for the purposes of demonstration, but did not attempt to offer the substitute weapon into evidence. The jury was told by the prosecutor that the substitute weapon was not the same weapon as had been used on the evening of the murder of Gregory Smith. The substitute weapon may have differed from the weapon admittedly discarded by the appellant to the extent that the appellant's weapon had a partially sawed off barrel. The trial court nonetheless permitted the uses of the substitute weapon, for demonstration purposes only, on the basis that the appellant's defense was that the weapon accidentally discharged, and that it would therefore be helpful to the jury to view a similar weapon in order to better determine the credibility of appellant's testimony:
 * * * It's the court's opinion that based on the testimony and the testimony that is anticipated to be offered * * * I've not heard up till now that there is any way this jury can be confused, one, that this is the weapon, since it's not represented as being the weapon in this case, but only a weapon that is similar to a weapon that would fire the shell casing that was found at the scene, that being a 30 caliber carbine shell casing. And further I believe that it would help the jury in understanding the evidence from the brief description given by the witness who saw the alleged weapon in the hand of the defendant * * *.
 But I'm going to let the officer testify as to the operation of this weapon. It does appear to be a main issue in this case, as to whether or not it went off accidentally.And a similar type weapon, I think, would be of some help to the jury.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Green (2000), 90 Ohio St.3d 352,369, 738 N.E.2d 1208, 1228; State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343, paragraph two of the syllabus. The trial court's decision to permit the use of a substitute weapon in this case was not an abuse of discretion as the demonstration assisted the jury in determining the ultimate issue in the case and there was no possibility of jury confusion or resulting prejudice to the appellant.
Accordingly, this assignment of error is overruled.
Although there is no manifest weight of the evidence assignment of error in the appellant's brief, the appellant devotes two paragraphs of the brief to arguing that the verdict was against the manifest weight of the evidence. Having reviewed the entirety of the record, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Martin (1983), 20 Ohio App.3d 172. Rather, we believe that the overwhelming quantity of evidence in the record is consistent with the jury's guilty verdict. Thus, the jury's verdict was not against the manifest weight of the evidence.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________ MICHAEL J. CORRIGAN, J.:
TIMOTHY E. McMONAGLE, P.J., and ANNE L. KILBANE, J., CONCUR.